IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2018 Session

## DOMNICK DORIA v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41200380     William R. Goodman III, Judge**

_____

### No. M2017-02024-CCA-R3-PC

_____

The Petitioner, Domnick Doria, appeals from the Montgomery County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance of counsel because (1) original counsel forced the Petitioner to participate in a television interview prior to trial that caused the State to "cut off" plea negotiations; and (2) trial counsel failed to call the Petitioner's mother and his ex-wife to testify at trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Dominick Doria.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Daniel Brollier, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Petitioner was indicted for thirty-eight counts of Class B felony sexual exploitation of a minor by possessing over 100 images depicting minors engaged in sexual activity and one count of Class C felony sexual exploitation of a minor by possessing more than fifty videos depicting minors engaged in sexual activity. State v. Domnick Doria, No. M2014-01318-CCA-R3-CD, 2016 WL 1694120, at *15 (Tenn. Crim. App. Apr. 26, 2016), perm. app. denied (Tenn. Aug. 17, 2016). Following a jury trial, the Petitioner was convicted of four counts of Class B felony sexual exploitation of

a minor, eleven counts of the lesser-included offense of Class C felony sexual exploitation of a minor for possessing more than fifty images or materials, and twenty-four counts of the lesser-included Class D felony sexual exploitation of a minor for possessing fifty or less images or materials. Id. at *15. The trial court imposed a total effective sentence of thirteen years. Id. at *1. This court affirmed the Petitioner's convictions and sentences on direct appeal. Id. On August 17, 2016, our supreme court declined to review this court's opinion.

In July 2011, investigators obtained a search warrant for the Petitioner's apartment based upon information obtained from a "peer-to-peer" file sharing software suggesting that someone using the Petitioner's Internet Protocol (IP) address was disseminating child pornography. Doria, 2016 WL 1694120, at *3. Both the Petitioner and his roommates all connected to the Internet using the same IP address. Id. However, neither of the Petitioner's roommates' computers "contained peer-to-peer software," and "a cursory review" of their computers revealed no evidence of child pornography. Id. Also, both of the Petitioner's roommates denied ever using the Petitioner's computer. Id. at *3-4. During the search, the Petitioner stated to investigators "that he had 'accidentally downloaded' images of child sexual abuse," in addition to, conducting Internet searches for "taboo materials and strange fetishes." Id. at *2-3.

The Petitioner's computer was seized and forensically examined. Doria, 2016 WL 1694120, at *3-4. The examination revealed "more than 4,000 images and [sixty-one] video files of child pornography on [the Petitioner's] computer in both 'live' and 'deleted' formats" that were downloaded onto the computer between late April and July 2011. Id. at *4. It was the expert opinion of the forensic examiner that the Petitioner "was the individual who downloaded the images onto the computer." Id. The forensic examiner found no evidence of "'other user activity'" on the Petitioner's computer. Id. Furthermore, there were "several occasions when child pornography files were downloaded onto [the Petitioner's] computer while [the Petitioner] was logged in using his username or profile" for websites such as Facebook, Skype, Yahoo Instant Messenger, and "an online game." Id. at *4-5. Moreover, the forensic examiner "found no evidence that a virus or malware downloaded child pornography onto [the Petitioner's] computer." Id. at *5.

The Petitioner acknowledged that the computer seized by the investigators was his. Doria, 2016 WL 1694120, at *5. The Petitioner also admitted that he had downloaded the peer-to-peer file sharing software onto his computer. Id. The Petitioner claimed that he used the software "to download music and movies." Id. The Petitioner further admitted to having "searched certain terms 'to find role playing material'" and to having "downloaded child pornography by accident, [but] he attempted to delete it." Id. However, the Petitioner denied downloading the vast majority of the images and videos

found on his computer.  Id.  The Petitioner explained that his mother had sent him the computer "while he was deployed in Afghanistan" to "communicate with his family" and "'watch movies and play music.'"  Id.  The Petitioner claimed that he "often allowed other soldiers to use his computer" and that "his account passwords were saved on his compute,r" which would allow "other people to access his accounts while using his computer."  Id.  The Petitioner further claimed that, once he returned from Afghanistan, his roommates, and anyone else who came into his apartment, had access to his computer.  Id.

Following the affirmance of the Petitioner's convictions and sentences by this court, the Petitioner filed a timely petition for post-conviction relief.  The petition alleged that the Petitioner's original counsel was ineffective for calling a pretrial "press conference over [the] Petitioner's objections" and that this decision "crippl[ed]" later attempts to negotiate a plea agreement.  The petition also alleged that trial counsel was ineffective for failing to present the testimony of the Petitioner's mother and his ex-wife at trial.  On August 15, 2017, the post-conviction court held an evidentiary hearing on this matter at which the Petitioner, the Petitioner's mother, Cynthia Henrion, and trial counsel all testified.  Original counsel and the Petitioner's ex-wife were not called as witnesses at the evidentiary hearing.

The Petitioner testified that he met with original counsel only a few times and had no real discussion with original counsel about his case.  The Petitioner claimed that original counsel wanted him to do a television interview to "get the jury on [their] side." The Petitioner testified that he and his ex-wife thought the interview was a bad idea.  The Petitioner insisted to original counsel that he did not want to do the interview.  According to the Petitioner, original counsel asked the Petitioner to come to his office to discuss the interview.  The Petitioner claimed that when he arrived at original counsel's office, the television crew was already setup and that original counsel gave him some clothes to change into.  The Petitioner testified that he then acquiesced to the interview.  The Petitioner recalled that the interview took place not long after his arrest and about a year before his trial.

The Petitioner testified that he had no discussion with original counsel prior to the interview about how the State would react to it.  The Petitioner admitted that original counsel never told him how negotiations with the State had been proceeding prior to the interview nor gave him an indication of how the State reacted to the interview.  However, the Petitioner believed that the interview "annoyed" the State and "caused irreparable damage to [his] case."  The Petitioner claimed that trial counsel told him that the State did not want to settle the case because of the interview.  However, the Petitioner admitted that the defense had not taken "any specific settlement offers to the State."  The Petitioner

further admitted that none of the jurors stated that they had seen the interview or heard about his case on television.

The Petitioner testified that he wanted his ex-wife and his mother to testify at trial. According to the Petitioner, his ex-wife could not travel at the time of his trial because she was pregnant. The Petitioner testified that trial counsel was aware of his ex-wife's travel restrictions, but that trial counsel did not seek a continuance. The Petitioner also wanted his mother to testify at trial. The Petitioner claimed that his mother was going to travel to Tennessee to testify on the last day of his trial, but that trial counsel called her and told her that "the trial was moving too quickly" and not to "bother" coming. Again, trial counsel did not seek a continuance.

The Petitioner asserted that his mother would have testified about when he returned from Afghanistan, when he had Internet access at his apartment, and when he visited his mother in New Jersey in the spring of 2011. The Petitioner asserted that his mother's testimony would have shown that some of the downloads occurred while he was in Afghanistan or without Internet access. The Petitioner also alleged that over half of the images found on his computer were duplicates. The Petitioner testified that he wanted both women to testify, but that he deferred to trial counsel's judgment.

The Petitioner's mother, Ms. Henrion, testified that original counsel had promised to talk to the trial judge and get the Petitioner's case "wiped out." Ms. Henrion recalled that the Petitioner had "mentioned" the idea of a television interview and that he "did not want to do it." Ms. Henrion thought a television interview was a bad idea and "would just anger the crowd."

Ms. Henrion planned to testify at trial. Ms. Henrion asserted that she would have testified that the Petitioner returned to the United States on April 24, 2011.[1] Ms. Henrion stated that she would have testified about when she setup the Petitioner's Internet access at his apartment and claimed that some of the downloads occurred before the Petitioner moved into his apartment. Ms. Henrion also stated that she would have testified that the Petitioner had a virus on his computer. Ms. Henrion further stated that she would have testified that there were no downloads while the Petitioner was on leave and visiting her. Ms. Henrion asserted that this would prove the Petitioner's innocence because "if he [was] the type of person that downloads these things[, then] he would have downloaded them when he was on leave and he had his laptop with him." Ms. Henrion claimed that

---

[1] The forensic investigator testified at trial "that 'a number of child pornography files' were downloaded to [the Petitioner's] computer on April 29, 2011; May 4, 2011; May 15, 2011; June 7, 2011; June 8, 2011; June 15, 2011; June 16, 2011; June 18-19, 2011; July 5, 2011; [and] July 11, 2011." Doria, 2016 WL 1694120, at *15.

-4-

trial counsel called her and told her that "the trial was going way too fast" and insisted that she not come to Tennessee.

Trial counsel testified that he was retained a few months before the trial. Trial counsel had seen the television interview. Trial counsel recalled that the Petitioner stated that he was reluctant to do the interview, but that original counsel insisted that he do it. Trial counsel believed that the interview had "tainted the case." Trial counsel explained that the initial forensic report "was cursory" and did not mention "collateral activity" on the computer. Trial counsel asserted that after the interview, the prosecutor asked the forensic examiner to "dig deeper" because the Petitioner had said during the interview that someone else had used his computer in Afghanistan and that some "unknown person . . . did this."[2]

Trial counsel testified that the forensic examiner found "the most extensive collateral activity that [trial counsel] had seen in a case like this." For example, evidence was found that the Petitioner had paid a utility bill, was "Skyping," was on Facebook, and conducted "other social media activities" while child pornography "was being downloaded." Because this evidence was discovered, trial counsel believed that the interview had "hurt [the case] tremendously."

Nonetheless, trial counsel testified that he "spent a lot of time" attempting to negotiate a plea agreement with the State. However, the State refused to negotiate. Trial counsel testified that the interview "could have been a contributing factor" to the State's refusal to negotiate, but that it was "the facts of the case," "the types of images . . . and the volume of them," that really "stalled" the negotiations. Trial counsel did not think this was "a case [where] . . . the State was going to have trouble getting a conviction."

Trial counsel admitted that he did not call the Petitioner's ex-wife to testify at trial, but he could not recall why. Trial counsel recalled that he "was kind of shocked" when the Petitioner "showed up by himself" for trial. Trial counsel believed that the Petitioner was "embarrassed" about the charges and "really didn't want his family [present] during the trial." Trial counsel also recalled that Ms. Henrion "did not want to take off work more than one day" and wanted trial counsel to call her "when [they] were going to need her." However, "[t]he trial moved a lot faster than [he] expected and [he] never called her as a witness."

Trial counsel testified that he thought Ms. Henrion's proposed testimony "really wasn't that strong" and would not "have made any difference whatsoever" given the evidence against the Petitioner. Regarding Ms. Henrion's claims that some of the

---

[2] The State disputed this characterization of the investigation during its argument at the post-conviction hearing.

downloads occurred prior to the Petitioner's moving into his apartment, trial counsel testified that "[t]here just wasn't enough information to try to completely develop that" and noted that he had requested more "documentation" from the Petitioner on those claims.

On September 12, 2017, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court noted that original counsel's decision regarding the television interview "might not have been the most beneficial action in retrospect," but concluded that there was "no evidence showing that it had any effect on the prosecution" or "affected the outcome of the trial." The post-conviction court also concluded that there was no prejudice from Ms. Henrion's not having testified at trial in light of the overwhelming evidence of the Petitioner's guilt. The post-conviction court noted that there was "little proof" that Ms. Henrion "could have established that [the Petitioner] did not have [I]nternet access as soon as he took possession of the computer." The post-conviction court did not address the Petitioner's claim regarding his ex-wife.

## ANALYSIS

The Petitioner contends that he received ineffective assistance of counsel. The Petitioner's argues that original counsel was ineffective for forcing the Petitioner to participate in a television interview prior to trial that caused the State to "cut off" plea negotiations. The Petitioner also argues that trial counsel was ineffective for failing to call Ms. Henrion and the Petitioner's ex-wife as witnesses. The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made

under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The Petitioner failed to demonstrate that he was prejudiced by the television interview. To begin, we note that the Petitioner failed to present a copy of the interview at the post-conviction hearing; therefore, we do not know exactly what was said during the interview. However, trial counsel's testimony suggested that the Petitioner's statements during the interview were similar to his testimony at trial. Moreover, the Petitioner admitted to investigators and at trial that he "accidentally downloaded" child pornography. Furthermore, none of the jurors stated that they had seen the Petitioner's interview or heard about his case on television. See State v. Blom, 682 N.W.2d 578, 625 (Minn. 2004) (finding no prejudice in defense counsel's admitting the defendant's guilt at a press conference when the jurors all stated that they could decide the case based solely upon the evidence and the defendant's actual confession was admitted at trial); see also State v. Wood, 967 P.2d 702, 710-11 (Idaho 1998) (finding no prejudice in defense counsel's arranging an "ill-advised" press conference where the defendant made incriminating statements when the defendant had previously confessed and made other incriminating statements to the press).

The Petitioner's chief argument is that the television interview caused the State to cease plea negotiations. Original counsel did not testify at the post-conviction hearing. The Petitioner admitted that original counsel never told him how negotiations with the State had been proceeding prior to the interview or how the State reacted to the interview. The Petitioner assumed that the interview had "annoyed" the State. Trial counsel believed that the interview had "tainted the case" because it led the State to "dig deeper" in its examination of the Petitioner's computer, but not because it halted plea negotiations. Trial counsel testified that he "spent a lot of time" attempting to negotiate

with the State, but the State refused. While trial counsel thought that the interview "could have been a contributing factor," he believed that it was the overwhelming evidence of the Petitioner's guilt that really "stalled" the negotiations. As such, the Petitioner failed to prove by clear and convincing evidence his factual allegation that the State ceased plea negotiations because of the television interview.

Regarding Ms. Henrion's proposed testimony, when a petitioner alleges that trial counsel was ineffective for failing to call a witness at trial and that witness has been presented at the post-conviction hearing, "the post-conviction court must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense." Plyant v. State, 263 S.W.3d 854, 869 (Tenn. 2008). A finding that "trial counsel was not deficient in failing to call [a] witness at trial" is justified if "the post-conviction court determine[d] that the proffered testimony would not have been admissible at trial or that . . . it would not have materially aided the petitioner's defense at trial." Id. "[I]f the proffered testimony [was] both admissible and material, the post-conviction court must assess whether the witness [was] credible." Id. at 869-70. However, the decision of what witnesses to call at trial is a strategic and tactical decision to be made by trial counsel and which we "will not second-guess" if it was an informed decision. Id. at 873-74.

The post-conviction court concluded that the Petitioner was not prejudiced by trial counsel's failure to call Ms. Henrion, noting that there was "little proof" that she "could have established that [the Petitioner] did not have [I]nternet access as soon as he took possession of the computer." Trial counsel testified that Ms. Henrion "did not want to take off work more than one day" and wanted trial counsel to call her "when [they] were going to need her." However, "[t]he trial moved a lot faster than [he] expected and [he] never called her as a witness." Moreover, trial counsel thought Ms. Henrion's proposed testimony "really wasn't that strong" and would not "have made any difference whatsoever" given the evidence against the Petitioner. Regarding Ms. Henrion's claims that some of the downloads occurred prior to the Petitioner's moving into his apartment, trial counsel testified that "[t]here just wasn't enough information to try to completely develop that." Given the weakness of Ms. Henrion's testimony, we conclude that trial counsel made an informed tactical decision not to call her as a witness.

With respect to the Petitioner's argument that trial counsel did not call his ex-wife at trial, we note that the Petitioner failed to present his ex-wife at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the

-8-

witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. As such, this issue is without merit.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE